STATE OF MISSOURI EX REL., CHADWICK CONSOLIDATED SCHOOL DISTRICT, RELATOR, v. CLARENCE JACKSON ET AL., RESPONDENTS.—84 S. W. (2d) 988.

Springfield Court of Appeals.   June 27, 1935.

*Omer E. Brown* for relator.

*G. Purd Hays* for respondents.

BAILEY, J.—Relator herein applied to this court for a writ of prohibition against respondents Clarence Jackson, J. L. Little and J. W. Fugitt, composing the county court of Christian county, to prohibit them from enforcing a certain order and judgment by which they have attempted to enjoin the collector of revenue of Christian county from collecting a certain school tax levy. Our temporary writ was issued upon relators application, March 7, 1935. Respondents filed their return on March 12, 1935, praying that the temporary writ be dissolved. Thereafter, on March 19, 1935, relators filed motion for judgment on the pleadings.

The application for the writ of prohibition contains substantially the following allegations: That on the 7th day of January, 1935, after two-thirds or more of the taxes levied by petitioners, constituting the board of directors of the district, had been paid, G. Purd Hays, an attorney, filed a petition, without notice, to the county court of Christian county, which is as follows:

"In the Matter of Levy of Taxes by the Board of Directors in Chadwick Consolidated School District Number 1, Chadwick, Missouri.

"COMES now Ed Finney, Tom Harris and R. A. Shipman and for themselves and all other persons similar situate who are resident taxpayers of Christian County, Missouri, and are residents of said Chadwick Consolidated District No. 1 and state to the court that at the time of making an estimate for taxation the board of directors of said district made an illegal and erroneous assessment in the sum of $.50 on the one hundred dollars for the purpose of paying a sinking fund to pay and retire certain bonds and bonded indebtedness. That by an examination of the estimate filed in the office of the county clerk of this county the said estimate shows upon its face that there is no sinking fund to retire certain bonds. That said bonds have been

fully paid retired and there is no tax that can be legally levied and collected unless there is a debt or sinking fund to be raised by taxation.

"WHEREFORE the parties Ed Finney, Tom Harris and R. A. Shipman pray the court to declare the assessment erroneous and that they notify and instruct the county collector that the said levy of the said tax is erroneous and illegal and void and that he correct his tax books and not to collect or try to collect said erroneous and illegal tax."

That upon the said petition being presented the county court of said county made its order as follows:

"MINUTES OF THE COUNTY COURT, JANUARY 7, 1935. 12th DAY NOVEMBER TERM.

"Ordered by the court that the petition of Ed Finney, and Tom Harris and et al. in relation of the assessment in Chadwick Con. District Number 1 held as being erroneous assessment be granted as prayed for in petition and collector be notified not to collect taxes levied by said $.50 assessment on $100 assessed valuation."

The application further states that the levy was made pursuant to an estimate made by the board of said district and filed with the county clerk; that at the time said levy was made there was outstanding and unpaid against the Chadwick Consolidated School District a bonded indebtedness in the sum of $825; that said levy was made by petitioners for the purpose of being certain that there would be enough funds on hand with which to pay said bonded indebtedness; and that the proceedings before the county court are a direct encroachment upon the authority of this court.

The return of respondents admits that the order heretofore set forth was made by them, but denies each and every other allegation.

It is further alleged that the statement of petitioners that there was a bonded indebtedness in the sum of $825 on the 7th day of January, 1935, is untrue; that said district had no outstanding indebtedness of $825 or any other amount; that there was no sinking fund or building fund required. It is further alleged as follows:

"Defendants state that for the school years 1933 and 1934, the plaintiff, district owed $873 on outstanding bonds; That there was then in the treasury of said district, to liquidate, or pay the said $873, the sum of $950, in cash, at the time of making the estimate and levy for the school years of 1933 and 1934, and that at the time the said plaintiff, district, made a levy of 50c on the hundred dollars assessed valuation, to meet and pay the $873, the amount of outstanding bonds, in addition to the $950 in cash then in the treasury; and at the time the said levy was made the $950 would have retired the principal of said bonds and had, for the payment of interest, $77, to pay interest accruing from that date until the bonds were paid;

but levied the additional levy of 50c on the hundred dollars assessed valuation to meet the payment of the said outstanding bonds in the sum of $873.''

It is further alleged in respondent's return that in making the order of January 7, 1935, the county court acted ministerially and within its jurisdiction; that the levy and estimate made by relator was untrue; that relators knew said estimate and levy was untrue and that the making thereof was a fraud on the county court; that the county court had a right to decree that the estimate was false and to direct the county collector to correct his books and to refrain from collecting the illegal taxes derived from said illegal levy; that the records of the school district and the records of the treasurer thereof showed that the district had more than enough money in cash to liquidate all outstanding indebtedness prior to the year 1934, and that by making and filing said estimate a fraud was practiced on the county court.

There is but one question in this case i. e., had the county court authority to declare a school levy void and order the county collector not to collect the tax based thereon after such levy had been made, based upon an estimate of the school board of the district, filed with the county clerk and extended on the tax books by him, particularly after the tax based thereon had been paid by a large percentage of the taxpayers of the district? The answer to that question depends upon the statutory powers of the county court. Such court is a creature of the constitution and its powers are limited by the terms of the various statutes defining its powers. It has no common law or equitable jurisdiction. [State ex rel. v. Johnson, 138 Mo. App. 306, l. c. 314, 121 S. W. 780.] In so far as the making of levies for school districts is involved, the county court has been given no supervisory powers whatever. Estimates for sinking fund and interest on bonded indebtedness of any district are made by the school board of such district. [Sections 9203, 9204, Revised Statutes 1929.] Upon receipt of such estimates it becomes the duty of the county clerk to make the assessment against the taxable property lying within the district, if within the limits prescribed by law. [Section 9261, Revised Statutes 1929.] The board of directors in this case made an estimate of twenty-five cents on the $100 valuation for sinking fund and a similar amount for interest. Such estimate was within the constitutional and statutory limit. It is true that at the time the estimate was made there appears to have been on hand sufficient funds belonging to the district to have retired all outstanding bonds. It was upon such state of facts the county court attempted to quash the levy and order the county collector not to collect the alleged illegal levy. There is no statutory authority for such procedure or

exercise of judicial power by a county court. In fact no court is given statutory power to revise an estimate of a school board when within the legal limits allowed by law. In the case of Lyons v. School District, 278 S. W. 74, where a similar state of facts arose, the Supreme Court said:

"The levies made for interest and sinking fund are not in any way violative of the constitutional provision. The levy for sinking fund is within the limit prescribed in the statute. The levy for interest, as we have already remarked, appears to be more than sufficient to pay the annual interest, but that fact, with the allegation that there is an intent to divert some of the fund when received, did not avoid the levy nor warrant injunction against the collection of those taxes. Upon the situation thus presented, the holding of this division of this court in Pope v. Lockhart, 299 Mo. 141, 252 S. W. 375, is apposite. It was there said, l. c. 146 (252 S. W. 376):

" 'It is clear that the Legislature committed to the school board the duty to make the estimates for the year, and that the board kept its estimate well within the lawful limits of the levy constitutionally authorized by the voters. The courts are not expressly given authority to revise the estimates of the board, and will not arrogate to themselves such power merely because it may be thought the levy recommended will raise a sum in excess of the needs of the fund for which the levy is made nor yet because there may be some evidence tending to show an intent to divert the money, after its collection, to another purpose, since this can be dealt with when such attempt at diversion is made. [C., C. C. & St. L. Ry. Co. v. People, 208 Ill. l. c. 11, 12 (69 N. E. 832), and cases cited; 1 High on Injunctions (4 Ed.), 544, pp. 517-519.] The power given the board is "highly discretionary" and legislative in nature.' "

It clearly appears from the pleadings in this case that the order of the county court remains unexecuted in part. The purpose of the writ of prohibition is to prevent a court from assuming jurisdiction where it has none, and so long as any part of a void judgment remains unexecuted it may be prohibited. [State ex rel. Ellis v. Elkin, 130 Mo. 90, 30 S. W. 333; State ex rel. Public Service Co. v. Mulloy, 62 S. W. (2d) 730, 333 Mo. 282.]

The order of the county court in this case was made in January, 1935, long after the tax, the collection of which, was attempted to be prohibited had become payable. The large majority of the taxpayers had paid the tax, and while the question of laches is not a necessary question to be decided in this case, it would appear the order of the county court, granting it had jurisdiction, would greater harm and inconvenience than the alleged erroneous assessment it attempts to correct. We therefore conclude that the facts and circumstances in

this case the preliminary writ of prohibition heretofore issued should be made permanent. It is so ordered. *Allen, P. J.*, and *Smith, J.*, concur.